JEFFREY L. HOGUE, ESQ. (SBN#234557)
TYLER J. BELONG, ESQ. (SBN#234543)
ERIK A. DOS SANTOS (SBN#309998)
**HOGUE & BELONG**
170 Laurel Street
San Diego, CA 92101
Telephone No:  (619) 238-4720
Facsimile No:  (619) 270-9856

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

OMAR SEYMORE and ANGELA
SEYMORE, individually and on
behalf of all others similarly
situated,

        Plaintiffs,

    vs.

EQUIFAX, INC., a Georgia
corporation.

        Defendants.

_____

CASE NO.:  **'17 CV 1871 CAB MDD**

**CLASS ACTION COMPLAINT FOR DAMAGES**

1. **Violation of the Fair Credit Reporting Act (15 U.S.C. 1681, et seq.)**
2. **Negligence**
3. **Unfair and Deceptive Business Practices (Cal. Bus. & Prof. Code §§ 17200, et. seq.)**
4. **Violation of the Consumers Legal Remedies Act**

**DEMAND FOR JURY TRIAL**

1
2
3
4

Plaintiffs, OMAR SEYMORE and ANGELA SEYMORE, individually and on behalf of all others similarly situated, and demanding trial by jury, complains and alleges upon information and belief as follows:

5

## INTRODUCTION

6
7
8
9
10
11
12
13

1.     This is a class action brought by Plaintiffs OMAR SEYMORE and ANGELA SEYMORE (hereinafter "PLAINTIFFS"), on behalf of themselves and others similarly situated (collectively hereinafter referred to as "PLAINTIFF CLASS"), who have sustained injuries or damages arising out of defendant, EQUIFAX, INC., a Georgia corporation's ("EQUIFAX" or "DEFENDANT") violations of federal law and the laws of the State of California by, *inter alia*, allowing hackers to access the sensitive personal information of more than 143 million people.

14
15
16

2.     PLAINTIFFS petition this Court to allow them to represent and prosecute claims against DEFENDANT in class action proceedings on behalf of all those similarly situated who are residents of the State of California.

17

## JURISDICTION AND VENUE

18
19
20
21
22
23
24
25
26

3.     This class action is brought pursuant to 28 U.S.C. section 1331, as this complaint contains a federal question on its face.  Moreover, this Court has diversity jurisdiction over all other claims pursuant to 28 U.S.C. section 1332(d) because PLAINTIFFS are both residents of California and Defendant is a resident of Georgia.  Moreover, the amount in controversy exceeds $5,000,000. Additionally, the Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. section 1367 because these claims are so related to the claims arising under federal law as to form the same case or controversy under Article III of the Federal Constitution.

27
28

4.     This Court has personal jurisdiction over DEFENDANT. DEFENDANT intentionally availed itself of the benefits of the State of California.

**CLASS ACTION COMPLAINT FOR DAMAGES**

DEFENDANT does substantial business in the State of California, and it was this business that gave rise to the present claim.  DEFENDANT further has sufficient minimum contacts with the State of California as to render the exercise of personal jurisdiction over this DEFENDANT proper in this state.

5.      Venue is proper in this district pursuant to 28 U.S.C. section 1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred in San Diego.  DEFENDANT has conducted substantial business in this district and a substantial portion of the property that is at issue in this action is situated in this district.

## THE PARTIES

6.      Plaintiff, OMAR SEYMORE is an individual and a resident of the State of California, County of San Diego.

7.      Plaintiff, ANGELA SEYMORE is an individual and a resident of the State of California, County of San Diego.

8.      DEFENDANT is a corporation, incorporated in Georgia, with corporate headquarters located at 1550 Peach Tree Street NW, Atlanta, Georgia, 30309.  DEFENDANT conducts business in the State of California.

## FACTUAL ALLEGATIONS

9.      DEFENDANT is one of the largest credit reporting services in the nation. They are often referred to as one of the "big three" credit reporting services. Because of their size, DEFENDANT was in possession of personal identifying information ("PII") of hundreds of millions of Americans.

10.      The PII that defendant possessed included individuals' names, addresses, driver's license numbers, credit card numbers, social security numbers, and other information contained in disputes regarding credit scores.  This information can be used to, *inter alia*, open a bank account or apply for credit.

**CLASS ACTION COMPLAINT FOR DAMAGES**

11.     Plaintiffs, OMAR SEYMORE and ANGELA SEYMORE were among the individuals whose information DEFENDANT possessed.

12.     As a consequence of the sensitive nature of the information possessed by DEFENDANT, DEFENDANT had a duty to exercise reasonable care in protecting the PII that it collected.  This duty included a duty to notify individuals promptly if their PII was compromised or accessed by unauthorized third parties.  DEFENDANT also had a duty to comply with all state and federal laws regarding credit reporting and the protection of consumer's personal information.

13.     Prior to May 2017, DEFENDANT had experienced three significant security breaches in the last five years.  These breaches occurred in 2013, 2016, and even as recently as January 2017.

14.     Having suffered three previous incidents in the last five years, DEFENDANT was made acutely aware of the risk that unauthorized hackers posed to the sensitive information that DEFENDANT kept and the vulnerabilities with its cybersecurity.  This pattern of successful attacks should have further put DEFENDANT on notice that its security mechanisms were inadequate.  Yet, DEFENDANT failed to take subsequent action sufficient to protect this information and prevent future breaches.

15.     On its website, DEFENDANT assured consumers that they would safeguard their information.  DEFENDANT'S Privacy Policy states:

> We have built our reputation on our commitment to deliver reliable information to our customers (both businesses and consumers) and to protect the privacy and confidentiality of personal information about consumers.  We also protect the sensitive information we have about businesses.  Safeguarding the privacy and security of information, both online and offline, is a top priority for Equifax.[1]

16.     Contrary to DEFENDANT'S assurances to consumers, DEFENDANT exercised remarkably substandard cybersecurity practices.  DEFENDANT'S

---

[1] http://www.equifax.com/privacy/

**CLASS ACTION COMPLAINT FOR DAMAGES**

cybersecurity practices were so abysmal, that United States Senator Mark R. Warner, in his September 13, 2017 letter to the Federal Trade Commission, writes:

> Cybersecurity experts have identified a number of security lapses, including in the days following Equifax's disclosure of the breach, that potentially indicate a pattern of security failings. . . . . [E]xperts have pointed to a wide range of other lapses by Equifax - including in the wake of the breach - that indicate exceptionally poor cybersecurity practices. For instance, experts have pointed to an exceedingly broad attack surface, with thousands of domains and subdomains managed by Equifax across hundreds of network hosts. And security experts have identified a range of antiquated, unpatched, or otherwise vulnerable systems maintained by Equifax.

> Equifax's post-breach actions also raise serious concerns about the company's data security practices. For instance, Equifax chose to register a new domain, Equifaxsecurity2017.com – but not in its own name. Reports also catalogued a litany of security mistakes, including use of potentially insecure content management software and improperly configured web encryption.

17.     Similarly, Senators Orrin G. Hatch and Ron Wyden (respectively, the Chairman and the Ranking Member of the Senate Finance Committee) submitted a joint formal inquiry to the CEO of Equifax, demanding responses to numerous very specific inquiries, and stating, "If the names, Social Security numbers, birth dates, and other information of 143 million Americans are now in the hands of cybercriminals, this breach will cause irreparable harm to programs within this Committee' s jurisdiction by way of stolen identity refund fraud, healthcare fraud, and entitlement fraud."

18.     As a result of DEFENDANT's exceptionally poor cybersecurity practices, in approximately mid-May, criminal hackers gained access to the PII stored by DEFENDANT.  These hackers likely collected, used, and will continue to use the personal information of around 143 million individuals.  This included approximately 209,000 credit card numbers and dispute documents involving approximately 182,000 customers.  These hackers had unfettered access to this information for at least ten weeks before the breach was discovered.

CLASS ACTION COMPLAINT FOR DAMAGES

1

2       19.     DEFENDANT claims that it was made aware of this historically

3   massive breach on July 29, 2017.  At that time, DEFENDANT did nothing to alert

4   individuals that might have been affected of what had happened.

5       20.     While DEFENDANT remained silent to potential victims,

6   DEFENDANT'S executives took steps to protect themselves.  Just days after the

7   hack, on August 1, 2017 and August 2, 2017, Chief Financial Officer John Gamble,

8   Jr., Workforce Solutions President Rodolfo Ploder, and US Information Solutions

9   President Joseph Loughran sold a combined $1.8 million worth of Equifax stock.

10      21.     On September 7, 2017, DEFENDANT notified the public of the breach.

11  This was nearly <u>six weeks</u> after DEFENDANT first became aware that it had

12  occurred.  In a press release, DEFENDANT stated that "Criminals exploited a U.S.

13  website application vulnerability to gain access to certain files."[2]

14      22.     In response to this hack, DEFENDANT created a website where

15  potentially affected consumers could enter their last name and the last six digits of

16  their social security number in order to determine whether their information might

17  be at risk.[3]  But, many individuals felt uncomfortable providing even more personal

18  information to a company that had already proven its vulnerability to secure private

19  information.

20      23.     On September 13, 2017, plaintiffs OMAR SEYMORE and ANGELA

21  SEYMORE inputted their information onto this website.  Each of them was

22  informed that "*Based on the information provided, we believe that your personal*

23  *information may have been impacted by this incident*."

24      24.     DEFENDANT also offered consumers one year of complementary

25  identity theft protection and credit file monitoring.  As stated above, however, many

26  individuals are uncomfortable trusting DEFENDANT to protect their personal

27  identifiers, given DEFENDANT'S gross inability to do so in the past.

28

[2] https://investor.equifax.com/news-and-events/news/2017/09-07-2017-213000628
[3] https://www.equifaxsecurity2017.com/

CLASS ACTION COMPLAINT FOR DAMAGES

25.     Having obtained the information stored by DEFENDANT, criminals are now able to cause a wide range of harm to PLAINTIFFS.  Criminals can take out loans, create bank accounts, or mortgage property in PLAINTIFFS' names.  It is also possible that those that now possess PLAINTIFFS' personal information could fraudulently obtain medical services and government benefits as well as register to vote using PLAINTIFFS' identity.

26.     PLAINTIFFS will need to spend large sums of money to protect themselves due to DEFENDANT'S poor security measures.  For example, PLAINTIFFS will need to closely monitor their financial accounts and utilize professional services in order to detect whether their identity is stolen.  They will also need to need to freeze lines of credit that they have already taken out.  If their identity is eventually stolen, they will expend the time and bear the responsibility of correcting it, to the extent doing so is even possible.

27.     This burden will continue indefinitely for PLAINTIFFS.  With such a treasure trove of information available, wrongdoers can afford to be patient.  For the rest of their lives, PLAINTIFFS will always carry with them the fear that somebody else has their personal information, and will attempt to use it against their interest.

28.     DEFENDANT either knew or should have known of the potentially disastrous results that would follow a security breach of this scale. As a leader in the credit reporting sector, DEFENDANT is well aware of the many possible illegitimate uses that a person with bad intentions would have for the information of another. As a result, DEFENDANT should have done more to protect the personal information that it was charged with storing.

///

///

///

///

**CLASS ACTION COMPLAINT FOR DAMAGES**

## CLASS ALLEGATIONS

29.     PLAINTIFFS bring this action pursuant to Federal Rule of Civil Procedure 23, seeking both injunctive and monetary relief.  PLAINTIFFS bring this suit individually, and on behalf of all others similarly situated, with PLAINTIFFS proceeding as the representative members of the proposed classes below:

> The "**Nationwide Class**" consists of all individuals and entities residing in the United States of America whose personal identifiable information was compromised by Equifax's data breach announced on September 7, 2017.

> The "**California Class**" consists of all individuals and entities residing in the State of California whose personal identifiable information was compromised by Equifax's data breach announced on September 7, 2017.

30.     Notwithstanding the class definitions provided in Paragraph 27, the following individuals shall not be a member of either class: all attorneys for the class, Equifax and any entities over which Equifax has a controlling interest, and any judge to whom this action is assigned including their staff and immediate family members.

**RULE 23(a)**

31.     **Numerosity.**  The persons who comprise the PLAINTIFF CLASS are so numerous that the joinder of all such persons would be unfeasible and impracticable.  The membership of the entire class is unknown to PLAINTIFF at this time; however, the PLAINTIFF, based on information and belief, alleges that the number of potential members in the PLAINTIFF CLASS is sufficient to satisfy numerosity, and the identity of such membership is readily ascertainable via inspection of DEFENDANT'S business records.  It is believed that there are more than 143 million members of the nationwide class, and tens of millions of members

of the California class.

32.  **Commonality.**  This class action presents several questions of law and fact that will be common to all members of the class. These include:

> a.  Whether DEFENDANTS' business practices as alleged herein is a violation under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq.;
>
> b.  Whether DEFENDANT acted negligently in storing and protecting the Personal Identifying Information of PLAINTIFFS and the PLAINTIFF CLASS;
>
> c.  Whether DEFENDANT'S alleged negligence with regard to PLAINTIFFS' and the PLAINTIFF CLASS' information caused PLAINTIFF and members of the PLAINTIFF CLASS to suffer damages;
>
> d.  Whether PLAINTIFF and the PLAINTIFF CLASS is entitled to injunctive relief;
>
> e.  Whether the DEFENDANTS' business practices as alleged herein constitute an unfair, unlawful, or fraudulent business practice in violation of California Business & Professions Code §17200, et. seq.;
>
> Whether DEFENDANTS' business practices as alleged herein is a violation under the Consumers Legal Remedies Act, Cal. Civil Code §§ 17500, et seq.;

33.  **Typicality**.  The claims or defenses of the PLAINTIFFS are typical of the claims or defenses of the class.  PLAINTIFFS' information was stolen by hackers as a result of DEFENDANT'S inadequate methods for securing information.  The PLAINTIFF CLASS claims that their information was also stolen as a result of the same deficiencies.

**CLASS ACTION COMPLAINT FOR DAMAGES**

34.    The relief sought by PLAINTIFFS is the same relief sought by the PLAINTIFF CLASS.

35.    **Adequacy**.  The PLAINTIFFS will fairly and adequately protect the interests of the class. PLAINTIFFS seek the same relief for both themselves and the class.  Their interests are perfectly aligned.  Both the PLAINTIFF and the PLAINTIFF CLASS seek to hold DEFENDANT responsible for its extensive wrongdoing under the same theories.  It is in PLAINTIFFS' best interest to prosecute these claims fully and to obtain all compensation to which they are rightfully entitled.

36.    PLAINTIFFS have retained experienced class counsel to prosecute this lawsuit.  Class counsel have both the knowledge and experience to handle a matter of this complexity.

37.    **Superiority**.  Under the facts and circumstances set forth above, class action proceedings are superior to any other methods available for both fair and efficient adjudication of the rights of each PLAINTIFF CLASS member inasmuch as joinder of individual members of the PLAINTIFF CLASS is not practical.  Even if joinder were practical, said PLAINTIFF CLASS members could not individually afford the litigation relative to their individual potential recoveries, meaning that individual litigation would be inappropriately burdensome, not only to said citizens, but also the courts of the nation.

38.    To process individual cases would increase both the expenses and the delay not only to PLAINTIFF CLASS members, but also to DEFENDANTS and the Court.  In contrast, a class action of this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economies of scale, unitary adjudication with consistent results and equal protection of the rights of each PLAINTIFF CLASS member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

**CLASS ACTION COMPLAINT FOR DAMAGES**

**RULE 23(b)**

39.     DEFENDANT has acted, or refused to act, on grounds that are generally applicable to the entire class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

40.     The above referenced questions of law or fact common to all class members will predominate over individual members, such that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  DEFENDANT'S lack of data security put all of the data that it held at risk.  When hackers were able to defeat the measures that were place, they were able to gain access to all class members' data at the same time.  Thus, common issues relating to DEFENDANT'S failure to safeguard all class members' information will overwhelm any individual questions.

**RULE 23(c)**

41.     Pursuant to Fed. Rule Civ. Proc. 23(c)(4), the Court may certify only particular issues for class treatment.

<strong><u>COUNTS</u></strong>

<strong><u>COUNT 1: VIOLATION OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681 ET. SEQ.)</u></strong>

42.     PLAINTIFFS and the PLAINTIFF CLASS incorporate all the preceding paragraphs as if fully set forth herein.

43.     Congress enacted the Fair Credit Reporting Act in order to ensure the accuracy and fairness of credit reporting. 15 U.S.C. § 1561(a).  This legislation sought to create a statutory scheme that was "fair and equitable to the consumer, with regard to the <u>confidentiality</u>, accuracy, relevancy, and proper utilization" of information used to make decisions regarding the extension of credit. 15 U.S.C. §

1681(b) (emphasis added.)

44. The Fair Credit Reporting Act defines a consumer as an individual. (15 U.S.C. § 1681a(c). The PLAINTIFFS and all members of the PLAINTIFF CLASS are thus consumers, entitled to protection.

45. A consumer reporting agency is defined to mean "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f). A person is defined broadly to include "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

46. DEFENDANT is a consumer reporting agency under the definition provided by this statute because DEFENDANT is multi-billion-dollar company that almost exclusively assembles and evaluates consumer credit information or other information on consumers for the purpose of furnishing reports to third parties.

47. 15 U.S.C. § 1681(b) lists the permissible purposes for consumer reports and specifies that these are the only uses to which these reports may lawfully put. This section *does not* include giving information to hackers with potentially criminal intentions. A consumer credit report is defined to mean "written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for… (A) credit or insurance to be used primarily for personal, family, or household purposes… (B) employment purposes; or… (C) any other purpose authorized under section 604." 15

U.S.C. § 1681a(d).

48.    The information that hackers were able to access was a consumer report under this statute because it was a communication of information relating to a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living and was expected to be used in deciding whether to extend credit to a consumer. The only reason that DEFENDANT had for collecting this information in the first place was to use it to create reports for this purpose, as doing so was DEFENDANT'S primary business.

49.    As a consumer reporting agency, DEFENDANT was obligated by 15 U.S.C §1681(e) to maintain reasonable procedures designed to limit use of those reports to the uses described in section 1681b.

50.    DEFENDANT did not comply with the requirements of the Fair Credit Reporting Act because DEFENDANT unreasonably allowed unauthorized individuals to gain access to consumer reports that it was tasked with protecting. Despite suffering multiple breaches in the past, DEFENDANT did not take the action that was necessary to protect these reports from coming into the hands of those that would misuse them.

51.    DEFENDANT willfully and/or recklessly violated the provisions of §§ 1681b and 1681e by allowing other parties to access the personal information of more than 143 million consumers.  The nature of DEFENDANT'S conduct is shown by the lack of response to previous hacks, its Privacy Policy explicitly recognizing the importance of data security, the actions of DEFENDANT'S executives in selling their stock immediately after this breach occurred, and DEFENDANT'S intentional and prolonged delay in announcing this breach to the public.

52.    Further, any reasonable credit reporting agency would have been aware of the importance of safeguarding confidential information.  These agencies distribute information to other entities, so that these entities can use the information to make important decisions.  As a result, they were aware of the power that an

individual could wield if they were to obtain the personal information of another and attempt to use it for nefarious purposes.

53.     PLAINTIFFS and the PLAINTIFF CLASS have suffered damages as a result of DEFENDANT'S willful and/or reckless failure to comply the Fair Credit Reporting Act.  Therefore, PLAINTIFFS and the PLAINTIFF CLASS are entitled to damages of not less than $100 and not more than $1,000.  15 U.S.C. § 1681n(a)(1). Additionally, PLAINTIFFS and PLAINTIFF CLASS are entitled to punitive damages, costs, and reasonable attorneys' fees. 15 U.S.C. § 1681n(a)(2) and (3).

54.     In the alternative, DEFENDANTS acted negligently in violating the Fair Credit Reporting Act, because their lack of reasonable care caused PLAINTIFFS and the PLAINTIFF CLASS'S personal information to be used for purposes other than those described in section 1681b.  PLAINTIFFS and PLAINTIFF CLASS are entitled to their actual damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1681o.

## COUNT TWO: NEGLIGENCE

55.     PLAINTIFFS and the PLAINTIFF CLASS incorporate all the preceding paragraphs as if fully set forth herein.

56.     DEFENDANT owed a duty to PLAINTIFF and the PLAINTIFF CLASS to exercise reasonable care in protecting their personal information. DEFENDANT'S duty included, among other things, designing, maintaining, monitoring, and testing all security systems in order to guarantee that all sensitive information was sufficiently protected.

57.     DEFENDANT'S Privacy Policy explicitly acknowledged the nature of this duty.

58.     DEFENDANT had a duty to take steps to promptly and effectively detect any intrusion of its data systems that might occur.

**CLASS ACTION COMPLAINT FOR DAMAGES**

59.     DEFENDANT had a duty to delete PII that was no longer needed to serve client needs.

60.     DEFENDANT had a duty to inform consumers that its data security practices were inadequate to protect PLAINTIFFS and the PLAINTIFF CLASS' PII.

61.     PLAINTIFFS and the PLAINTIFF CLASS reposed a special trust in DEFENANT by virtue of the fact that DEFENDANT was in possession of PLAINTIFFS' and the PLAINTIFF CLASS' PII.  This trust gave rise to an independent duty of care.  DEFENDANT was a multi-billion-dollar company with experience handling sensitive information, and thus should have had the ability to protect the data that it stored from attack.

62.     DEFENDANT breached its duty of care in multiple ways.  Defendant failed to implement and maintain adequate procedures in order to safeguard PLAINTIFFS' and the PLAINTIFF CLASS' PII. DEFENDANT further failed to inform PLAINTIFFS and the PLAINTIFF CLASS that it did not have the ability to guarantee the safety of their PII.  Once the breach occurred, DEFENDANT failed to promptly detect the breach.  Finally, once DEFENDANT did detect the breach, it failed to notify PLAINTIFFS or the PLAINTIFF CLASS of what had happened in a timely manner.

63.     But for DEFENDANT'S breach of duty, PLAINTIFF and the PLAINTIFF CLASS' PII would not have been compromised or obtained by hackers.

64.     Given the prior security breaches that had occurred, it was reasonably foreseeable that another security breach could occur and that people's credit could be affected if DEFENDANT did not increase its cybersecurity.  Further, PLAINTIFFS and the PLAINTIFF CLASS members were foreseeable plaintiffs because DEFENDANT were in possession of their PII.

**CLASS ACTION COMPLAINT FOR DAMAGES**

65.     As a result of DEFENDANT'S failure to protect the PII that it stored, PLAINTIFFS and the PLAINTIFF CLASS have suffered injury.  These individuals' information will remain at risk for the rest of their lives.  Apart from the emotional stress of knowing that they are vulnerable to identity theft at any time, they will need to carefully monitor both their credit score and all other financial accounts in order to prevent misuse of their information.  They will forever be subject to a heightened risk of fraud, and will need to take steps in order to protect themselves. Further, if their identity is subsequently stolen, they will need to act in order to minimize and reverse the damage to the extent possible.  Accomplishing these tasks will require professional assistance that PLAINTIFFS and the PLAINTIFF CLASS will need to pay for out of pocket.  These costs will continue to be incurred into the indefinite future.

66.     The damages to PLAINTIFFS and the PLAINTIFF CLASS were a proximate and readily foreseeable result of DEFENDANT'S breach of duty.

67.     Therefore, PLAINTIFFS and the PLAINTIFF CLASS are entitled to damages in an amount to be proven at trial.

## COUNT THREE: UNFAIR AND DECEPTIVE BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §§ 17200 ET. SEQ.)

68.     PLAINTIFFS and the PLAINTIFF CLASS incorporate all the preceding paragraphs as if fully set forth herein.

69.     Beginning at an exact date unknown to PLAINTIFFS and the PLAINTIFF CLASS, but within the past four years, the DEFENDANTS have committed acts of unfair, unlawful, and fraudulent conduct, as defined by California Business & Professions Code section17200, as set forth in this Complaint.

70.     Plaintiff alleges that DEFENDANTS' actions were unlawful, deceptive, and misleading.

71.     DEFENDANT has violated California law, including the California Customer Records Act (Cal. Civ. Code § 1798.80 et. seq.).  That statute requires that

**CLASS ACTION COMPLAINT FOR DAMAGES**

"A business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code § 1798.81.5.

72.     DEFENDANT violated the California Customer Records Act by failing to implement reasonable security procedures and practices appropriate to this sort of incredibly sensitive and incredibly confidential information.  Defendant's shortcomings caused personal information of approximately 143 million people to fall into the hands of hackers.  DEFENDANT had suffered previous security breaches in the past, and knew that its system was weak, but did not take the steps necessary to fix it.

73.     In addition to the failure to prevent the breach of its security systems, DEFENDANT also failed to timely notify those that would be impacted of what had happened. Once DEFENDANT did notify PLAINTIFFS and the PLAINTIFF CLASS that their information had been compromised, the only remedy that DEFENDANT offered required PLAINTIFF and the PLAINTIFF CLASS to provide DEFENDANT with <u>even more</u> personal information.

74.     As a proximate result of the above-mentioned acts of defendants, PLAINTIFF and the PLAINTIFF CLASS have lost money or property and suffered injury in fact, and have been damaged in a sum according to proof at the time of trial.

75.     If not stopped, DEFENDANT will continue to inure benefit from their unlawful, unfair, and fraudulent acts.

76.     PLAINTIFF is informed, believes, and thereon alleges that these acts of the DEFENDANT were willful, oppressive, fraudulent, and malicious in that DEFENDANT knew that its security systems had been breached multiple times in the past, but did not act to shore them up.  DEFENDANT also failed to inform

-17-
**CLASS ACTION COMPLAINT FOR DAMAGES**

consumers of the breach so that they could protect themselves. Instead, DEFENDANT'S executives sold their own stock so that they would not be harmed when it plummeted in value.

77.     DEFENDANT had a profit-based motive to act in the manner alleged. Updating security systems in order to be able to protect the vast amounts of data stored by DEFENDANT would have likely been costly.  Once the breach had occurred, DEFENDANT could not reveal what had happened out of fear that its reputation would be negatively impacted. Because it is essential that the public trust DEFENDANT with their information, the fallout from this incident could have been devastating.

78.     Accordingly, the PLAINTIFFS and the PLAINTIFF CLASS are entitled to punitive and exemplary damages, to deter such future conduct, in an amount within the jurisdiction of the Superior Court to be proved at the time of trial.

## COUNT FOUR: VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT (CALIFORNIA CIVIL CODE §§ 1750, ET. SEQ.)

79.     PLAINTIFFS and the PLAINTIFF CLASS incorporate all the preceding paragraphs as if fully set forth herein.

80.     DEFENDANT'S actions toward PLAINTIFF and the PLAINTIFF CLASS, as set forth above, constitute unfair and deceptive acts or practices in violation of applicable law, including the Consumers Legal Remedies Act, California Civil Code section 1770(a)(5), (7), and (9), which provide, in pertinent part, that "the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:…

a.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status,

**CLASS ACTION COMPLAINT FOR DAMAGES**

affiliation, or connection that he or she does not have.

b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

c. Advertising goods or services with intent not to sell them as advertised."

81.    PLAINTIFF is informed and believes and thereon alleges that the above described unfair and deceptive practices were intentionally adopted by DEFENDANT in order to enhance DEFENDANT income by allowing them to avoid costs associated with maintaining a security system that would adequately protect the personal information that DEFENDANT possessed, and avoid losing revenue as a result of a diminished reputation once the public learned what had happened.

## **PRAYER FOR RELIEF**

WHEREFORE, the PLAINTIFFS and the PLAINTIFF CLASS:

1. For an Order that the action be certified as a class action;

2. For an Order that Plaintiffs be appointed representatives of the Class;

3. For and Order that the attorneys of record for Plaintiffs be appointed Class Counsel;

4. Pursuant to California Business & Professions Code §§17203 & 17535, and pursuant to the court's equitable powers, Plaintiffs pray that the DEFENDANT be ordered to restore to the general public all funds acquired by means of any act or practice declared by the Court to be unlawful, unfair or fraudulent or to constitute unfair advertising under §17500;

**CLASS ACTION COMPLAINT FOR DAMAGES**

5.  For an order awarding PLAINTIFF and the PLAINTIFF CLASS pre-judgment and post-judgment interest as well as their reasonable attorney's fees and costs pursuant the Consumer Legal Remedies Act, Civil Code §§ 1750, et seq.; Code of Civil Procedure §1021.5; and other statutes as may be applicable;

6.  For costs of suit; and

7.  For all such other and further relief the Court may deem just and proper.

Dated:  September 13, 2017          **HOGUE & BELONG**


By: _s/ Jeffrey L. Hogue_
    JEFFREY L. HOGUE
    TYLER J. BELONG
    ERIK A. DOS SANTOS
    Attorneys for Plaintiffs

**CLASS ACTION COMPLAINT FOR DAMAGES**